**UNITED STATES DISTRICT COURT**    b

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **MOSES M. MUSOKE** | **CIVIL ACTION 1:17-CV-01054** |
| **VERSUS** | **JUDGE DRELL** |
| **RYAN D. MCCARTHY,** *et al.* | **MAGISTRATE JUDGE PEREZ-MONTES** |

**REPORT AND RECOMMENDATION**

Defendants filed a Motion to Dismiss (Doc. 9). Because Plaintiff failed to allege prima facie claims for relief, the Motion to Dismiss (Doc. 9) motion should be granted.

I.    <u>Background</u>

Plaintiff Moses M. Musoke ("Musoke") filed a complaint, pursuant to 42 U.S.C. § 2000e, against the United States Department of the Army through Secretary of the Army Mark T. Esper ("the Army").[1] Musoke was employed by the Army as a civilian pharmacist at Ft. Polk in Leesville, Louisiana. Musoke alleges that, due to his national origin (Uganda) and/or reprisal for his prior EEO activity (on March 19, 2015), he was subjected to: (1) discrimination; (2) harassment; (3) retaliation; and (4) a hostile work environment. Musoke additionally alleges he was deprived of his constitutional rights of freedom of speech, association, equal protection, and due

---

[1] Ryan McCarthy was replaced as Secretary of the Army by Mark T. Esper.

process of law.  Musoke contends that, as a result, he was denied his "right" to provide adequate professional ethical care to his patients, citing "AR 600-85." [2]

More specifically, Musoke contends:

(1) Since February 22, 2015, Musoke's supervisor, Captain (CPT) Shawn Bookwalter, caused plaintiff to be paid less than his similarly situated peers;

(2) In March and April 2015, CPT Bookwalter harassed plaintiff by ordering him to provide him with his US Marine Corps (USMC) Reserve Drill schedule a year in advance, attempted to deny him military leave, and counseled him in writing on March 25, 2015, and April 6, 2015;

(3) From April 1, 2014 through June 1, 2015, CPT Bookwalter refused to place plaintiff on duty as on-call pharmacist, resulting in a loss of pay;

(4) In October 2015, CPT Bookwalter denied plaintiff the resident phase of the Civilian Education System (CES) Foundation Course, relative to his employment with Bayne-Jones Army Community Hospital (BJACH), US Army Medical Command, Fort Polk, LA; and

(5) On October 8, 2015, CPT Bookwalter issued plaintiff a written counseling referencing his performance and told him he would receive a poor performance evaluation.

Musoke seeks back pay and benefits, reinstatement or front pay, general damages, punitive damages, attorney's fees and costs, and legal interest.

The Army filed a Motion to Dismiss pursuant to Fed. R. Civ. P. rule 12(b)(1) (Doc. 9), contending: (1) Title VII preempts whistleblower claims; (2) Musoke failed to exhaust his whistleblower and hostile work environment claims; (3) Musoke failed to sufficiently plead claims of discrimination or retaliation; and (4) Musoke failed to sufficiently plead a claim of constructive discharge.

---

[2] "AR 600-85" appears to be an Army Regulation pertaining to the army substance abuse program.

Musoke responded to the Army's motion (Doc. 15), and the Army filed a reply (Doc. 19).

## II.    Law and Analysis

### A.    Standards governing the Motion to Dismiss pursuant to 12(b)(1).

Lack of subject matter jurisdiction may be found on any one of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.    See Robinson v. TCI/US West Communications, Inc., 117 F.3d 900 (5th Cir. 1997).    Where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations.    Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

### B.    Musoke's constitutional and whistleblower claims should be dismissed for lack of subject matter jurisdiction.

Defendants contend that Musoke's constitutional and whistleblower claims should be dismissed for lack of jurisdiction.

#### 1.    Constitutional claims are preempted by the EEOC.

Musoke alleges civil rights claims for denial of his constitutional rights of freedom of speech, freedom of association, equal protection, and due process of law.

Congress has waived the federal government's sovereign immunity for Title VII suits alleging discrimination in a government workplace based on race, sex, color, religion, or national origin by creating an exclusive, preemptive administrative and

3

judicial scheme. See 42 U.S.C. § 2000e-16; Brown v. General Services Administration, 425 U.S. 820, 829 (1976). The provisions of Title VII applicable to claims of discrimination in federal employment are the exclusive and preemptive remedy for such claims. See Rowe v. Sullivan, 967 F.2d 186, 189 (5th Cir. 1992) (citing Brown, 425 U.S. at 829). Therefore, Musoke's equal protection claims are preempted.

Insofar as a plaintiff's allegations of constitutional violations arise out of the same facts as his employment discrimination claims, they are preempted by Title VII and cannot afford an independent ground for relief. See Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996) (citing Rowe, 967 F.2d at 189). Consequently, Musoke's other constitutional claims, which are based on the same facts as his employment discrimination claims, are also preempted.

Musoke did not make any specific allegations to support his due process claim. However, insofar as one is alleged, it is noted that the EEOC is immune from a suit for money damages for improper handling of a complaint, and there is no cause of action against the EEO personnel at the Army for any alleged improper handling of Musoke's complaint. Adequate process is available to the plaintiff to redress any improper handling of his grievance. See Dillon v. U.S. Postal Service, 1996 wl 720840 (E.D. La. 1996) (citing Bush v. Lucas, 462 U.S. 367, 385 (1983)); see also Newsome v. EEOC, 1998 wl 792502, *3 (N.D. Tex. 1998), aff'd, 182 F.3d 915 (5th Cir. 1999), writ den., 528 U.S. 917 (1999).

Since Musoke's constitutional claims are preempted, Defendants' Motion to Dismiss should be granted as to his constitutional claims

### 2.    <u>Musoke has not stated a viable claim for retaliation due to whistleblowing.</u>

Musoke also claims he was subjected to illegal retaliation because of his "whistleblowing." Musoke contends he made complaints that dealt both directly and indirectly with patient care issues, and that Defendants retaliated against him for having complained.

Defendants argue Musoke did not exhaust his administrative remedies, under the Whistleblower Protection Act ("WPA"), with either the Office of the Special Counsel or the Merit Systems Protection Board.

The WPA proscribes retaliation against a federal employee who discloses what the employee reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. <u>See</u> 5 U.S.C. § 2302(b)(8); <u>Aviles v. Merit Sys. Prot. Bd.</u>, 799 F.3d 457, 459 (5th Cir. 2015). The WPA does not give an aggrieved employee the right directly to seek relief in federal court. 5 U.S.C. § 7703; <u>see</u> <u>Robinson v. Rubin</u>, 77 F.Supp.2d 784, 793 (S.D. Tex. 1999). Federal employees must exhaust their administrative remedies by first bringing complaints of WPA violations to the Office of the Special Counsel ("OSC"). <u>See</u> 5 U.S.C. § 1214(a)(1)(A). If not satisfied with OSC's initial determination, they can appeal to the Merit Systems Protection Board ("MSPB"). <u>See</u> 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1209.5(a); <u>Ellison v. Merit Systems Protection Board</u>, 7 F.3d 1031, 1035–36 (Fed. Cir. 1993).

Employees who receive adverse MSPB rulings can seek judicial review. <u>See</u> 5 U.S.C. § 7703.

However, in a "mixed case" involving both whistleblower and discrimination claims, an aggrieved federal employee can either: (1) seek administrative relief through the MSPB, an independent, quasi-judicial federal administrative agency that was established to review civil service decisions, 5 U.S.C. § 1221; or (2) file a complaint with the employing agency's EEO department, 5 U.S.C. § 7702. <u>See</u> <u>Robinson</u>, 77 F.Supp.2d at 793 (citing <u>McAdams v. Reno,</u> 64 F.3d 1137, 1141 (8th Cir. 1995)); <u>see also</u> <u>Johnson v. Danzig</u>, 2001 WL 562080 at *2 (E.D. La. 2001). The EEO or the MSPB decide both the issues of discrimination and the adverse employment action. <u>See</u> 29 C.F.R. § 1614.302; 5 C.F.R. § 1201.156. Once the employee who initiates either of these procedural paths receives a final determination, the employee may pursue judicial review of the final determination. <u>See</u> 29 C.F.R. § 1614.310; 5 U.S.C. § 7703(a)(1), (b)(1)-(2).

This is a mixed case. Musoke presented his whistleblower claim to the EEO department in an amended complaint (Doc. 9-4, p. 3/6). However, Musoke has not stated a whistleblower claim because the filing of an EEO complaint does not encompass whistleblowing activity, which usually involves disclosures outside of established procedures. <u>See</u> <u>Fleeger v. Principi</u>, 221 Fed. Appx. 111, 117 (3d Cir. 2007). An EEOC claim is not a disclosure of information by an employee that the employee reasonably believes evidences a violation of any law. <u>See</u> <u>Spruill v. Merit Systems Protection Bd.,</u> 978 F.2d 679, 691-692 (Fed. Cir. 1992) (the WPA refers to

disclosures of fraud, waste, abuse, and unnecessary Government expenditures). Congress purposefully drew a distinction between reprisal based on disclosure of information (a whistleblowing disclosure within the meaning of 5 U.S.C. § 2302(b)(8)), and reprisal based upon exercising a right to complain (a non-whistleblowing disclosure under 5 U.S.C. § 2302(b)(8)(A)).  See Serrao v. Merit Sys. Prot. Bd., 95 F.3d 1569, 1575 (Fed. Cir. 1996) (citing Spruill, 978 F.2d at 690).

Musoke admits his complaints related to patient care and were made in an EEO complaint.  Musoke alleges he was retaliated against for complaining, rather than for the disclosure of information relating to illegal activity.  Therefore, Musoke has not stated a claim under the Whistleblowers' Protection Act.  Defendants' Motion to Dismiss (Doc. 12) should be granted as to Musoke's whistleblowing claim.

### C.   Musoke's claim of a hostile work environment should be dismissed for lack of exhaustion.

Defendant contends Musoke failed to exhaust his administrative remedies for his claim of a hostile work environment.

A federal employee must exhaust administrative remedies against an employer before suing under Title VII.  See Thomas v. Napolitano, 449 Fed. Appx. 373, 374-75 (5th Cir. 2011) (citing Francis v. Brown, 58 F.3d 191, 192 (5th Cir. 1995)). F.3d 511, 513 (5th Cir. 2003)); Munoz v. Aldridge, 894 F.2d 1489, 1493–94 (5th Cir. 1990).  A plaintiff claiming employment discrimination under Title VII must exhaust administrative remedies by filing a timely charge with the EEOC and receiving a right-to-sue notice.  See Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002).  The charge enables the EEOC to investigate and, if appropriate, negotiate a

resolution with an employer.  See McClain v. Lufkin Indus., Inc., 519 F.3d 264, 272 (5th Cir. 2008).  Only after administrative remedies are exhausted may an employee file suit against his employer.  See id.; 42 U.S.C. § 2000e–5(b).[3]

In evaluating whether a plaintiff has exhausted his administrative remedies, the court engages in a fact-intensive analysis of the statement in the EEO charge, looking slightly beyond its four corners, to its substance rather than its label.  See Sanchez v. U.S. Postal Serv. ex rel. Donahoe, 430 Fed. Appx. 368, 371 (5th Cir. 2011) (citing Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006), cert. den., 549 U.S. 888 (2006)).  A Title VII complaint is limited to what can reasonably be expected to grow out of the investigation.  See id.  A cause of action for Title VII employment discrimination may be based not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.  Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 450–51 (5th

_____

[3] Federal employees must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the actions.  29 C.F.R. § 1614.105(a)(1).  The 45-day limitation period begins to run from the time the discriminatory event or personnel action occurs, not when the plaintiff discovers or can prove that a discriminatory intent motivated the action.  See Webster v. Chertoff, 2008 WL 4791584, at *3 (N.D. Tex.  2008) (citing Pacheco v. Rice, 966 F.2d 904, 906 (5th Cir. 1992)).  A Title VII charge must be filed with the EEOC within 180 days from the date of the alleged violation.  See 29 C.F.R. § 1601.13(a)(1)); 42 U.S.C. § 2000e-5(e)(1).  A charge must be in writing under oath or affirmation.  See id.; Edelman v. Lynchburg College, 535 U.S. 106, 112 (2002).

Failure to timely initiate contact with an EEO counselor or to file a formal EEO complaint within the required period will bar subsequent review of the claim in federal court absent waiver, estoppel, or equitable tolling, and it is the employee's burden to establish these exceptions.  See Webster, 2008 WL 4791584, at *3 (citing Pacheco, 966 F.2d at 905).

Cir.1983), cert. den., 464 U.S. 828 (1983); see also Sanchez, 430 Fed. Appx. at 371 (citing Pacheco, 448 F.3d at 789).

The elements of a hostile work environment claim are: (1) discriminatory intimidation, ridicule, and insults that are, (2) sufficiently severe or pervasive that they, (3) alter the conditions of employment, and (4) create an abusive working environment. See Harris v. Forklift Systems, 510 U.S. 17, 21 (1993); see also Stewart v. Miss. Transp. Com'n, 586 F.3d 321 (5th Cir. 2009). A plaintiff must show that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive work environment. See Harris, 510 U.S. at 21.

"[H]arassment on the basis of national origin is a violation of Title VII. An employer has an affirmative duty to maintain a working environment free of harassment on the basis of national origin. Ethnic slurs and other verbal or physical conduct relating to an individual's national origin constitute harassment when this conduct: (1) [h]as the purpose or effect of creating an intimidating, hostile or offensive working environment; (2) [h]as the purpose or effect of unreasonably interfering with an individual's work performance; or (3) [o]therwise adversely affects an individual's employment opportunities." 29 C.F.R. § 1606.8(a)-(b).

Musoke has not alleged incidents of "racially discriminatory intimidation, ridicule, and insults" that were sufficiently severe and pervasive to alter Musoke's work environment.[4] See Brooks v. Firestone Polymers, LLC, 70 F. Supp. 3d 816, 850 (E.D. Tex. 2014), aff'd sub nom., Brooks v. Firestone Polymers, L.L.C., 640 Fed .Appx.

---

[4] Musoke only alleged one derogatory comment made within his hearing by Lt. Yapp, about African Americans being lazy.

393 (5th Cir. 2016).  Musoke did not even mention facts that would have put the EEOC and the Army on notice about the possibility of a hostile work environment claim.  Therefore, Musoke failed to exhaust his administrative remedies as to his hostile work environment claim, and Defendants' motion to dismiss that claim should be granted.

### D.   Musoke's discrimination claims should be dismissed for failure to allege a prima facie case.

Defendants contend Musoke's discrimination claims should be dismissed for failure to allege sufficient facts to state a prima facie case of employment discrimination.  Musoke claims he was discriminated against because of his national origin in Uganda.  Defendants contend Musoke has not offered any evidence to show any of Defendants' alleged discriminatory acts were motivated by Musoke's national origin.

Title VII makes it unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 513 (1993).  In a Title VII claim, the plaintiff must establish a *prima facie* case that the defendant made an employment decision motivated by a protected factor.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995).  Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (citing

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  To make a *prima facie* case that he suffered discrimination due to his race or national origin, a plaintiff must show he was (1) a member of a protected class; (2) qualified for the position held; (3) subjected to an adverse employment action; and (4) treated differently from others similarly situated.  See Yee v. Baldwin-Price, 325 Fed. Appx. 375, 379 (5th Cir. 2009).  "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same."  Thompson v. Exxon Mobil Corp., 344 F.Supp.2d 971, 981 (E.D. Tex. 2004) (citing Watts v. Kroger Co., 170 F.3d 515, 512 (5th Cir. 1999)).

If the plaintiff establishes a *prima facie* case, the defendant then bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason.  See Mayberry, 55 F.3d at 1089.  The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.  St. Mary's Honor Ctr., 509 U.S. at 507.  If the defendant succeeds in doing so, the burden then shifts back to the plaintiff to prove the defendant's proffered reasons were a pretext for discrimination.  See Mayberry, 55 F.3d at 1089.

The district court must decide which party's explanation of the employer's motivation it believes.  See St. Mary's Honor Ctr., 509 U.S. at 511.  It is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.  See id.

National origin discrimination is defined "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." See 29 C.F.R. § 1606.1.

Musoke alleges the following adverse employment actions due to his national origin in his complaint:

(1) Since February 22, 2015, Musoke's supervisor Captain (CPT) Shawn Bookwalter caused plaintiff to be paid less than his similarly situated peers;

(2) In March and April 2015, CPT Bookwalter harassed plaintiff by ordering him to provide the schedule for his US Marine Corps (USMC) Reserve Drill a year in advance, attempted to deny him military leave, and counseled him in writing on March 25, 2015, and April 6, 2015;

(3) From April 1, 2014 through June 1, 2015, CPT Bookwalter refused to place plaintiff on duty as on-call pharmacist, resulting in a loss of pay;

(4) In October 2015, CPT Bookwalter denied plaintiff the resident phase of the Civilian Education System (CES) Foundation Course, relative to his employment with Bayne-Jones Army Community Hospital (BJACH), US Army Medical Command, Fort Polk, LA; and

(5) On October 8, 2015, CPT Bookwalter issued plaintiff a written counseling referencing his performance and told him he would receive a poor performance evaluation.

1. **Written counseling, providing advance schedules, attempted denial of leave, and denial of an educational course are not adverse employment events.**

Musoke's last four complaints are not adverse employment actions within the meaning of Title VII.

Specifically, Title VII was only designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have

some tangential effect upon those ultimate decisions.   See Burger v. Central Apartment Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999).  Ultimate employment decisions may include acts such as hiring, granting leave, discharging, promoting, and compensating.  See Burger v. Central Apartment Management, Inc., 168 F.3d 875, 878 (5th Cir. 1999); see also Jackson v. Honeywell Intern., Inc., 601 Fed. Appx. 280, 289 (5th Cir. 2015).  An adverse employment action is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (hostile work environment claim).  An adverse employment action within the purview of Title VII in most cases inflicts direct economic harm.  See id. at 762; Arizpe v. Slater, 1999 WL 33290630, at *6 (W.D. Tex. 1999).

Musoke contends he was counseled in writing for work errors on March 25, 2015, April 6, 2015, and October 8, 2015.  Musoke alleges some of the other pharmacists made more mistakes than he made, but were not counseled.  Musoke also contends some of his reprimands were based on mistakes of fact by his supervisors.

"[F]alse accusations, verbal reprimands, and investigations [are] not actionable adverse employment actions." Marchman v. Crawford, 2018 wl 1308703, at (5th Cir. 2018) (citing Colson v. Grohman, 174 F.3d 498, 511 (5th Cir. 1999) (citing Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998), cert. den. *sub nom.*,

526 U.S. 1065 (1999)).  By themselves, documented reprimands, though potentially affecting future employment decisions, do not qualify as adverse employment actions.  See Thompson v. Exxon Mobil Corp., 344 F. Supp. 2d 971, 981 (E.D. Tex. 2004).  The same is true of negative performance evaluations, even if they were not deserved.  Thompson, 344 F. Supp. 2d at 981; see also Carthon v. Johnson Controls, Inc., 100 Fed. Appx. 993, 997 (5th Cir. 2004) (the employee's receipt of a single disciplinary warning—without an attendant change in the terms or conditions of his employment—does not qualify as an ultimate employment decision); Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000) (employer's decision to take away a big account from an employee after she filed an EEOC complaint did not constitute an adverse employment action even though it decreased her chances of advancement); Davis v. Miss. Transp. Commission, 618 F. Supp. 2d 559, 564 (S.D. Miss. 2009) (an employment action that limits an employee's future opportunities for promotion, but does not affect the employee's job duties, compensation, or benefits, does not qualify as an adverse employment action).

Musoke does not allege he suffered any other adverse consequence for his errors.  Therefore, Musoke's allegations of reprimands and written counseling, without more, are not the type of ultimate employment decisions that qualify as adverse employment actions cognizable in a Title VII discrimination action.

Musoke further contends he was discriminated against and harassed when he was ordered to provide the schedule for his US Marine Corps (USMC) Reserve Drill a year in advance, and when Bookwalter attempted to deny him military leave.

14

Neither of these complaints are adverse employment actions. Although the denial of leave could be, Musoke only alleges Bookwalter attempted to deny him leave – not that he actually did so. Also, Musoke did not allege any adverse employment action suffered as a result of having to provide his reserve drill schedule for the upcoming year, regardless of whether another pharmacist was not required to do so.

Musoke also alleges he was denied an opportunity to take the resident phase of the CES Foundation Course in October 2015. Claims of denial of training opportunities do not constitute an adverse employment action when the training is peripheral to plaintiff's main duties and plaintiff produces no significant evidence that a denial of such training would tend to affect employment status or benefits. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406–407 (5th Cir. 1999). Since Musoke has not alleged any adverse effects on his employment status or benefits from the denial of the training course in October 2015, he has not alleged an adverse employment action occurred.

Therefore, Defendants' Motion to Dismiss (Doc. 9) should be granted as to Musoke's claims of: discrimination due to being ordered to provide the schedule for his USMC Reserve Drill a year in advance; the attempt to deny him military leave; denial of an educational opportunity; and reprimands and written counseling.

### 2. Musoke was not subjected to an adverse employment action when he was denied the opportunity for on-call duty prior to June 2014.

Musoke also contends there was an adverse employment action when he was denied the opportunity to earn on-call duty pay. The on-call duty pay was apparently in addition to the regular salary.

The Fifth Circuit has held that denial of overtime pay that an employee *otherwise would have earned* constitutes an adverse employment action for purposes of Title VII.  See <u>Johnson v. Manpower Professional Servs., Inc.</u>, 442 Fed. Appx. 977, 982 (5th Cir. 2011) (employee's status was changed to "overtime exempt" and he stopped receiving overtime pay) (citing <u>Shannon v. Bell Telecom., Inc.</u>, 292 F.3d 712, 716 (11th Cir. 2002) (employee was "blackballed" from overtime and he stopped receiving overtime pay)).  However, The Fifth Circuit more recently stated there is no precedential authority in this circuit establishing whether a denial of overtime constitutes an adverse employment action.  See <u>Brooks v. Firestone Polymers, L.L.C.</u>, 640 Fed. Appx. 393, 397 (5th Cir. 2016).

Musoke has not shown that his job duties, compensation, or benefits were changed.  Musoke had never received on-call duty pay.  Defendants contend Musoke was not trained for on-call duty until May 2015, and he was placed on the on-call duty roster in June 2015.[5]  Musoke has not shown that Defendants' non-discriminatory reason for not giving Musoke on-call work before he was trained to do it is a pretext for discrimination.  Therefore, Defendants' Motion to Dismiss (Doc. 9) Musoke's claim as to on-call duty pay should be granted.

### 3.  <u>Musoke was not subjected to an adverse employment action with regard to his pay in February 2015.</u>

Musoke next contends that, since February 22, 2015, his supervisor, Captain Shawn Bookwalter, caused Musoke to be paid less than his similarly situated peers.

---

[5] Musoke's two months of on-call duty pay (in June and July) set forth in the record is within the range of on-call duty pay earned within two months by the three other pharmacists who worked on-call (Doc. 15-3, p. 1/10).

To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that he was paid less than a member of a different [national origin] was paid for work requiring substantially the same responsibility. See Pittman v. Hattiesburg Mun. Separate School Dist., 644 F.2d 1071, 1074 (5th Cir. 1981). To show pretext, a plaintiff need only show race [national origin] was a "but for" cause, not the sole basis, for an adverse employment action. See Pittman v. Hattiesburg Municipal Separate School District, 644 F.2d 1071, 1077 (5th Cir. A 1981); see also Bourgeois v. United States Coast Guard, 151 F.Supp.3d 726, 735 (W.D. La. 2015).

Musoke admits he was hired directly from school, immediately after graduation, by the Army at a starting pay of $79,000 plus about $19,000 as a retention bonus, which he received in 2013 and 2014.

In 2015, the Army recognized that Step 11 was too low for pharmacists, given the higher qualifications and educational levels required of pharmacists in recent years, and raised all Grade 11 pharmacists to Grade 12 (Doc. 15-2, pp. 1-6/25).

Musoke's job level was raised to Grade 12, Step 1, with a pay level of $ 90,999, but the retention bonus was discontinued. According to Musoke, the other four pharmacists' employment levels were raised to Grade 12, Step 6 (Doc. 15-3, p. 1/10).[6]

Musoke contends that, as a result of the February 2015 transition, his base pay increased, but he received less pay than before because he was no longer paid a

---

[6] It is noted that Defendants object to Musoke's pay chart (Doc. 15-3, p. 1/10), but have not stated whether or not it is incorrect (Doc. 19). The chart is used by the Court as an explanation of Musoke's argument, but the chart is not accepted as correct.

retention bonus. Musoke contends that, although he was told he could make up the pay loss with on-call duty pay, he was not given on-call duty until June 2015. According to Musoke, the pay grade change became effective in February 2015 (Doc. 15-3, p. 1/10). Musoke also alleges he received less pay than the other four pharmacists because he was from Uganda (Doc. 15-3, p. 1/10).

Musoke has not shown whether his comparators, the four pharmacists he worked with, were hired right out or school or had some experience before they worked for the Army. Musoke has not alleged the national origins of his comparators. Musoke has not alleged he and the other four pharmacists had substantially the same job responsibilities. Finally, Musoke has not alleged any of the other pharmacists received and were allowed to keep their retention bonus after February 2015. See Bender v. Shulkin, 2017 wl 1156327 (N.D. Tex. 2017).

Therefore, Musoke has not provided any evidence to show his pay was lower than that of his coworkers due to discrimination by Defendants because he was from Uganda, or that he was not permitted to work on-call for four months because he was from Uganda.

Since Musoke has not alleged a prima facie case of discrimination, Defendants' Motion to Dismiss (Doc. 9) this claim should be granted.

### E.  Musoke has not stated a claim for retaliation.

Defendants contend Musoke failed to state a prima facie case of retaliation.

Title VII's anti-retaliation provision prohibits an employer from discriminating against any of his employees for engaging in protected conduct, without specifying

18

the prohibited employer acts.  See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 62. The anti-retaliation provision is not limited to discriminatory actions that affect the terms and conditions of employment.  See id., at 64.  The anti-retaliation provision protects an individual from retaliation that produces an injury or harm.  See id. at 67.

To prove a claim under Title VII's anti-retaliation provision, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination to the EEOC.  See id. at 68; see also Thompson, 562 U.S. at 174; Brandon v. Sage Corp., 808 F.3d 266, 270 (5th Cir. 2015); Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009).  The standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint.  The focus is on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position.  See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69-70.

The purpose of this objective standard is "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  See id.  Even when an adverse action is intended by the employer as retaliation, it must still satisfy this materiality standard.  See id. at 67–68 (explaining that Title VII's anti-retaliation provision does not protect an individual from all retaliation).

19

A prima facie case of retaliation exists if the plaintiff establishes that: (1) plaintiff participated in statutorily protected activity; (2) plaintiff received an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  See Mayberry, 55 F.3d at 1092 (citing Armstrong v. City of Dallas, 997 F.2d 62, 65 n. 3 (5th Cir. 1993)).   To prove a claim, the plaintiff need not show that the protected activity was the sole factor motivating the adverse action, but must show that "but-for" the protected activity, the plaintiff would not have been subjected to the adverse employment action.  See Long v. Eastfield College, 88 F.3d 300, 305 n. 4 (5th Cir. 1996); Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507 (5th Cir. 1994).  The timing of an adverse employment action can be a significant, although not necessarily determinative, factor.  See Mayberry, 55 F.3d at 1092.

Musoke alleges he felt harassed starting in March 2015, due to the attempt to interfere with his military leave.

Musoke filed an EEO complaint on March 3, 2015, alleging discriminatory treatment by Capt. Shawn L. Bookwalter[7] (Doc. 15-2, p. 9/25).  Musoke filed a second EEO complaint on April 17, 2015 (Doc. 9-3).  Musoke alleged he was discriminated against by Capt. Shawn Bookwalter because he was from Uganda and suffered reprisals from Bookwalter because he has filed an EEO complaint in March 2015 (Doc 9-3).  A pre-complaint inquiry was concluded on July 9, 2015 (Doc. 9-3).  Musoke filed a third complaint on July 10, 2015, alleging discriminatory action on Jun 1, 2015

---

[7] Bookwalter required Musoke to give him one year's notice of all his U.S. Marine Corps reserve duty drill dates, which Musoke contends violates Army policy (Doc. 15-, p. 9/25).

(Doc. 9-4, p. 3/6).  Musoke amended that complaint on October 20, 2015, alleging discriminatory action on October 8, 2015 (Doc. 9-4, pp. 1-2/6).

Musoke has not shown the challenged actions (counseling/reprimands, reporting military drill leave in advance, attempted denial of military leave) were materially adverse.  Obviously, those actions did not dissuade Musoke from making or supporting a charge of discrimination to the EEOC, nor would they have dissuaded any reasonable worker.  Therefore, Musoke has not alleged a prima facie case of retaliation.

Defendants' Motion to Dismiss Musoke's retaliation claim should be granted.

F.    **Musoke has not stated a prima facie claim for constructive discharge.**

Musoke contends Defendants' illegal discrimination, harassment, retaliation, and hostile work environment denied him the opportunity to advance to a supervisory position at Ft. Polk and forced Musoke to transfer, first to Ft. Hood in 2016, then to a VE facility in Ohio in 2017.

To prove constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.  See Shafer v. Army & Air Force Exch. Serv., 376 F.3d 386, 397 (5th Cir. 2004), op. clarified, 2004 WL 2107672 (5th Cir. 2004).  Courts evaluate six factors to determine whether a plaintiff has established a constructive discharge claim: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of

early retirement that would make the employee worse off whether the offer was accepted or not. <u>Jordan v. Mitchell</u>, 2013 WL 705442, at *7 (M.D. La. 2013) (citing <u>Hunt v. Rapides Healthcare System, LLC</u>, 277 F.3d 757, 771–72 (5th Cir. 2001)).

Musoke has not alleged or shown any of the six factors listed above. Musoke has not stated a prima facie case of discrimination, retaliation, or hostile work environment. Musoke also has not shown what supervisory position he was "denied" or the reason given for his not getting that promotion. Therefore, Musoke has not established that his working conditions were so intolerable that a reasonable employee would feel compelled to resign. Therefore, Defendants' Motion to Dismiss (Doc. 9) Musoke's claim for constructive discharge should be granted.

## III.    <u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Defendants' Motion to Dismiss (Doc. 9) be GRANTED and that Plaintiff's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS ORDERED AND SIGNED in Chambers at Alexandria, Louisiana on this _2nd_ day of May, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge

23